[No. 31326.   Department One.   August 24, 1950.]

EMERY S. RUSSELL et al., Appellants, v. KENNETH P. JACKSON et al., Respondents.[1]

[1]Reported in 221 P. (2d) 516.

*Ralph Purvis* and *James B. Sanchez*, for appellants.

*Lycette, Diamond & Sylvester*, for respondents.

GRADY, J.—This appeal is from a judgment dismissing an action brought by appellants at the close of the evidence submitted by them. Viewing the evidence in a light most favorable to appellants, it appears that Lorene Russell consulted Dr. Kenneth P. Jackson and employed him to perform a surgical operation, consisting of the removal of her appendix and straightening the position of her uterus.

The appellant and her husband had no children. She was desirous of having nothing done in the course of the operation that would affect the ovaries so as to impede pregnancy. This was made known to respondent, and he was further informed that if he discovered any condition necessitating further surgery, he must leave that to be done by another surgeon. The respondent assured appellant he would do nothing other than to remove the appendix and straighten the uterus. During the course of the operation, respondent removed the appendix, and discovered the Fallopian tubes and one ovary were adhered to the uterus and that there was a cyst on one ovary. This cyst was a normal growth that forms on an ovary each twenty-eight days. He removed the cyst, and separated the tubes and ovary from the uterus. In doing so, parts of the ovary became separated from it, and were also removed.

The appellant called as witnesses Dr. Charles Larson, a pathologist, and Dr. Glen Bramwell, a physician and surgeon who had assisted respondent in the performance of the operation. It appears from their testimony that, if a cyst on an ovary is discovered during an operation, it is common practice to remove it and have it examined by a pathologist; that in order to straighten the position of the uterus it was necessary to free the tubes and ovary from their adherence to it, and, in doing so, fragments of the ovary became cut off from their blood supply and had to be removed; that the amount of ovarian tissue removed would not affect pregnancy; that sometimes the removal of a portion of an ovary will excite it into activity, but such re-

moval does not, of itself, enhance the ability to become pregnant, though coupled with the freeing of the tubes would probably do so. The surgeon stated appellant would have a better chance to become pregnant than she had before the operation, but it was his personal opinion she would not become pregnant.

A consideration of the testimony submitted by appellant can lead to but one conclusion, and it is that she believed her inability to become pregnant was due to the lack of normalcy in the position of her uterus, and if that difficulty was removed the disability would cease. She desired to avoid having anything additional done which might impede pregnancy.

The evidence makes it clear that respondent did just what he was instructed to do. He removed the appendix and adjusted the uterus to its normal position. Appellant has wholly failed to prove that the necessary and incidental separating of the adhered tubes and ovary or the removal of the cyst has rendered her unable to become pregnant. All of the evidence of appellant indicates that some unknown condition has existed during all of her married life, as a result of which she has not become pregnant. She has not shown that the operation affected that condition one way or the other.

We are in accord with the contention of appellant that, if respondent performed surgery beyond that which he was directed, he would be liable for any resultant injury or damage; but the evidence submitted by her negatives the application of such a rule of conduct on the part of respondent. The breaking up of the adhesions in order to adjust the uterus was a necessary part of what he was requested to do.

The inhibition was that he should do nothing in addition to the adjustment that would prevent pregnancy. The trial court had nothing before it to indicate that respondent had done anything within the inhibition, but on the contrary, if any change had been brought about at all, it was in the direction of the removal of her disability. Whether the respondent deviated from what he had contracted to do or what appellant had directed him to do must necessarily

depend on medical testimony, and that which appellant submitted refutes her claim.

We have given consideration to the testimony to the effect that, prior to the operation, appellant's facial skin condition was normal; that she had not been nervous, and that she had normal menstrual periods, but that since the operation she had facial eruptions, was extremely nervous and upset, and had irregular and scanty menstrual flow. Whether there was any causal connection between the operation and the subsequent condition disclosed was also a medical question, and the record is barren of any proof upon which an affirmative finding of fact could be made.

The conclusion we have reached makes it unnecessary to cite authority or discuss academic rules of law pertaining to rights, duties and obligations of surgeons when acting under a specific contract or instructions in the performance of a surgical operation, or to decide the other questions raised.

The judgment is affirmed.

SIMPSON, C. J., BEALS, SCHWELLENBACH, and DONWORTH, JJ., concur.